File Name: 08a0087n.06
Filed: January 30, 2008
NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-3333

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

WILLIAM H. MALOOF,

     Plaintiff-Appellant,

v.

BT COMMERCIAL CORPORATION, DEUTSCHE BANK
TRUST COMPANY AMERICAS, LASALLE BANK
NATIONAL ASSOCIATION, AND NATIONAL CITY
BANK,

     Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

_____/

BEFORE:    KENNEDY, MARTIN, and COLE, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff William H. Maloof appeals the dismissal of his lawsuit for lack of standing. Maloof alleged fraudulent and corrupt practices by the defendant banks, which damaged his corporations and himself as the sole shareholder of those corporations. The district court dismissed the case because shareholders of a corporation have no standing to seek redress for injuries done to the corporation. Because Maloof has not alleged any direct injury to himself, we must AFFIRM the district court, and dismiss his lawsuit for lack of standing.

I.

Plaintiff, William H. Maloof, was the sole shareholder, director and CEO of Level Propane Gases, Inc., and Park Place, Inc. Level Propane was a propane distribution business operating in the Great Lakes region, and headquartered in Westlake, Ohio. Park Place was a parking lot facility at Cleveland Hopkins Airport in Brookpark, Ohio.

On November 30, 1999, Level Propane and Park Place, and their affiliated entities, entered into a credit agreement with defendants. Pursuant to this agreement, defendants made loans and other financial accommodations to Level Propane and Park Place.

According to Maloof, in January 2001, Level Propane faced a number of lawsuits filed by the State of Ohio regarding Level Propane's underutilization fees. In June 2001, FerrellGas offered to purchase the gas distribution portion of Level Propane's business for the total indebtedness to the banks, leaving Maloof with his gas transport business and Park Place businesses free and clear of debt. Maloof communicated this offer to the banks, but put off the offer so that a higher purchase price might be commanded once the state lawsuits were resolved.

By October 2001, Maloof's relationship with the banks was strained as a result of the state lawsuits against Level Propane and his companies' over-line borrowing. He engaged a law firm to consider Chapter 11 voluntary bankruptcy for all of his companies. By the end of 2001, the state lawsuits had been settled and a voluntary Chapter 11 petition was being prepared.

In January 2002, Star Gas, a national propane distributor, made a formal written offer to purchase the propane distribution business for $165 million. If accepted, this would leave Maloof with approximately $85 million, his transport business, his rights to market propane in Florida, and

his parking businesses, free and clear of the debt owed to the banks. Star Gas made this offer after due diligence had been completed during an appraisal in anticipation of Level Propane's Chapter 11 bankruptcy. That appraisal valued Level Propane, exclusive of Park Place and without valuation of Level Propane's computer technology, at no less than $125 million.

On March 7, 2002, Maloof and the banks entered into a Forbearance Agreement in which Maloof gave up management of Level Propane to a Chief Restructuring Officer (CRO) as a condition of the banks' consent to the sale of the distribution business. According to Maloof, the CRO put in place by the banks proceeded to financially ruin Level Propane over the course of the next few months. The CRO failed to secure winter fuel supply and failed to make equipment lease payments. Cash-flow at Level Propane by May 2002 had dropped severely. On June 3, 2002, the CRO resigned. During this period, FerrellGas renewed its offer to purchase Level Propane's distribution business for $165 million. However, the CRO failed to respond to the offer prior to resigning.

As part of the credit agreement, the banks had reserved the right, under a stock pledge agreement executed by Maloof, to vote Maloof's shares in order to remove him as the director at both companies in the event of a default. On June 6, 2002, the banks exercised this right, and removed Maloof as director. On that same day, immediately after removing Maloof, the banks filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code against Maloof's companies.

Shortly after the Chapter 7 filing, the banks, Maloof, the Level Propane and Park Place debtors, and their respective counsel met in order to resolve the disputes that led to the removal of Maloof as director and the filing of the involuntary bankruptcy petitions. The parties eventually reached an agreement. Pursuant to the agreement, the banks agreed to withdraw their motion for the

appointment of a trustee in the bankruptcy, and a proposed order and stipulation would be presented to the bankruptcy court that would, among other things, convert the Chapter 7 cases to Chapter 11. The bankruptcy court did enter the order, and the bankruptcy case was converted to Chapter 11.

The Chapter 11 bankruptcy was actively litigated by all parties. Level Propane and Park Place and their respective affiliated companies were the debtors. Maloof was an active participant, and filed more than 270 documents. Maloof also appealed several of the bankruptcy court's orders to the district court.

On July 25, 2002, the bankruptcy court entered its *Final Order Authorizing Debtors in Possession to Enter Into Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code, Provide Adequate Protection and Grant Liens, Security Interests and Superpriority Claims*. This Final Order established an investigation period during which any party in interest could bring any claims on behalf of the debtors' estates against the banks. On September 17, 2003, when no claims against the banks were brought within this period, the door was barred, and the banks were released from "all claims, rights, causes of action or defenses by, and all liabilities owing to, the Debtors, the Committee, all of the Debtors' creditors, and any subsequently appointed trustee." JA 273-74 (Amended Financing Order).

On June 5, 2006, Maloof filed the instant complaint against the banks, and filed an amended complaint on June 21. Maloof asserts four causes of action. These include three federal and state racketeering claims, and one claim alleging tortious interference with contract. On February 13, 2007, the district court dismissed Maloof's complaint, holding he had no standing as a shareholder to bring claims alleging injury to Level Propane and Park Place. Maloof now appeals.

II.

The district court dismissed Maloof's case, finding that "an action to redress injuries to a corporation cannot be maintained by a shareholder, such as Maloof, in his own name; that shareholder lacks standing to bring the claims." JA 350. We review a district court's dismissal of a complaint for lack of standing de novo. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007).

Our analysis begins and ends with whether or not Maloof's claims are "to redress injuries to a corporation," or are to redress damage he has suffered personally. As the district court found, and as has been conceded by Maloof in his brief, his claims are for injury done to his corporations. *See* JA 25-26 (alleging corrupt activity on the part of the banks and their law firm with regards to the corporations' proposed Chapter 11 bankrutpcy), JA 26 (corrupt activity of bank's hand-picked CRO in financially ruining Level Propane and destroying its relationship with its customer base), JA 27 (banks interference with purchase offers for Level Propane's distribution business), and JA 28 (fraudulent activity frustrating the successful reorganization of Level Propane from the Chapter 11 proceeding).

Having alleged no direct personal injury due to the banks' alleged misconduct, any injury he may have suffered as a consequence of the damage done to his corporations is derivative. It is black-letter law that Maloof has no standing to bring such claims. *See Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993).

Maloof argues that there are exceptions to this rule, but his arguments fall flat. Shareholders may only bring direct suit when they have been directly injured, not when they are seeking redress for injury done to the corporation. *See Crosby v. Beam*, 548 N.E.2d 217, 219 (Ohio 1989) ("[i]f the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action."). As far as we know, this rule has not changed.

III.

Therefore, because Maloof has no standing to bring suit against defendants for injury done to a corporation of which he is a shareholder, the district court's decision to dismiss his case is AFFIRMED.