**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0260n.06
Filed: May 15, 2008

**No. 06-3839**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

B. & V. DISTRIBUTING CO., INC.,

      **Plaintiff,**

**and**

**ALBERT BATTLER,**

      **Plaintiff/Appellant,**

**v.**

**DOTTORE COMPANIES, LLC,
MARK DOTTORE, and
THOMAS DOTTORE,**

      **Defendants/Appellees.**

      **ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO**

_____/

**Before: BATCHELDER and DAUGHTREY, Circuit Judges; and ROSEN, District Judge.**\*

      ROSEN, District Judge.

**I. INTRODUCTION**

      In this appeal, Plaintiff/Appellant Albert Battler ("Battler") challenges the district

---

    \* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

court's decision to dismiss with prejudice a breach-of-contract suit brought by Battler and a company he formed, B. & V. Distributing Co., Inc. ("B. & V. Distributing"), against Defendants/Appellees Dottore Companies, LLC, Mark Dottore, and Thomas Dottore. Only Battler, and not B. & V. Distributing, has appealed from the district court's ruling. Specifically, Battler argues (i) that the district court impermissibly deviated from the standards of Fed. R. Civ. P. 12(b)(6) by considering a contract that was not attached to the complaint, but instead was provided as an exhibit to the defendants' motion to dismiss; (ii) that the district court erred in determining that Battler failed to identify a viable legal basis for an individual recovery under an alleged agreement to sell the assets of B. & V. Distributing to Defendant Dottore Companies; and (iii) that the district court's dismissal of this suit with prejudice was inconsistent with the court's purported determination that it lacked subject matter jurisdiction. For the reasons set forth below, we AFFIRM the district court's ruling in all respects.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1972, Plaintiff/Appellant Albert Battler formed two companies that shared the same name — B. & V. Distributing Co., Inc. — but were established under the laws of two different states, Ohio and Florida.[1] In 1993, Battler merged the two companies to form the second plaintiff in this suit, B. & V. Distributing Co., Inc. According to Battler, he believed at the time that the resulting entity was an Ohio corporation, but he later

---

[1]Where necessary for the sake of clarity, we will occasionally refer to these two entities as B. & V. Ohio and B. & V. Florida.

learned that the Ohio corporation had been merged into the Florida corporation. Battler is the president and sole shareholder of Plaintiff B. & V. Distributing.

According to the complaint, in the summer of 1999, Battler entered into negotiations with Defendant/Appellee Mark Dottore for the sale of all of B. & V. Distributing's assets to Defendant/Appellee Dottore Companies, LLC. These negotiations were concluded by the fall of 1999, with Dottore Companies agreeing to pay monthly installments of $8,500 toward the total purchase price of $306,000. In accordance with these terms, all of the assets of B. & V. Distributing were transferred to Dottore Companies by December 16, 1999, before the parties had reduced their agreement to writing. When presented with a written contract memorializing this agreement, Defendant/Appellee Thomas Dottore refused to sign it, but an unspecified "representative" of Dottore Companies signed the contract on March 1, 2000. (*See* Complaint at ¶ 15, J.A. at 9.)[2]

Over four years later, in August of 2004, Battler commenced the first of two lawsuits arising from this transaction, alleging that while all of B. & V. Distributing's assets were transferred to Dottore Companies, the defendants failed to make any of the

---

[2]Both before the district court and on appeal, the defendants have asserted that the "contract" upon which this suit is based never existed, that neither of the individual defendants ever signed such an agreement, and that no other representative of Dottore Companies was authorized to enter into such a contract on the company's behalf. Rather, the defendants contend that they engaged in far more limited transactions to purchase only some of the physical assets of B. & V. Distributing, for which they paid the agreed-upon purchase price. Nonetheless, because the district court decided this matter on a motion to dismiss, the defendants have accepted the complaint's allegations as true, and we will do likewise in resolving the present appeal.

3

agreed-upon monthly payments for these assets. (*See* 8/20/2004 Complaint at ¶¶ 9-14, J.A. at 86-87.) Although the complaint in this first suit referred to a "[w]ritten and signed contract" that was attached as an exhibit, (*id.* at ¶ 12, J.A. at 87), no such exhibit accompanied the complaint. Rather, Battler separately filed this document — entitled "Asset Purchase Agreement" and dated March 1, 2000, (*see* Asset Purchase Agreement, J.A. at 93) — roughly two months after the complaint was filed. Battler was the sole plaintiff in this 2004 action, and B. & V. Distributing was not named as a party, despite the fact that the Asset Purchase Agreement identified the contracting parties as B. & V. Distributing and Dottore Companies. (*See id.* at 1, J.A. at 93.)

In lieu of answering this 2004 complaint, the defendants filed a motion to dismiss, arguing (i) that Battler lacked standing to bring breach-of-contract and related claims that properly belonged to B. & V. Distributing, and (ii) that there was no diversity of citizenship between the proper plaintiff, B. & V. Distributing — which was identified in both the 2004 complaint and the Asset Purchase Agreement as an Ohio corporation — and the defendants, each of whom was also a citizen of Ohio. Before this motion could be heard, however, Battler agreed to voluntarily dismiss the case without prejudice.

Precisely a year after this dismissal, Battler commenced the present suit, this time naming B. & V. Distributing as an additional plaintiff and identifying this company as "a citizen of the State of Florida." (12/15/2005 Complaint at ¶ 2(a), J.A. at 6-7.) The complaint in this case, like the earlier one, alleges that all of B. & V. Distributing's assets

4

were transferred to Dottore Companies by December of 1999, but that the defendants failed to make any of the required monthly payments toward the agreed-upon purchase price of $306,000. This latest complaint also refers to a written agreement that was signed by a representative of Dottore Companies on March 1, 2000 and was "attached hereto as Exhibit A," (*id.* at ¶¶ 14-15), but no such document accompanied the complaint. In all other respects, the complaint in the present case is substantially the same as the 2004 complaint filed by Battler individually.

As they did in the earlier action, the defendants filed a motion to dismiss, and attached to their motion the "Asset Purchase Agreement" filed by Battler in the prior suit. In support of their motion, the defendants once again argued that Battler lacked standing to assert claims belonging to the corporate party to this alleged agreement, B. & V. Distributing. The defendants further challenged the standing of the other named plaintiff, B. & V. Distributing, to assert any claims arising from or related to the Asset Purchase Agreement, where this plaintiff was identified in the complaint as a Florida corporation — *i.e.,* B. & V. Florida — but the agreement identified the contracting party as an Ohio corporation — *i.e.,* B. & V. Ohio. To the extent that the complaint's allegations could be construed as claiming that B. & V. Florida was the successor-in-interest to the rights held by B. & V. Ohio under the Asset Purchase Agreement, the defendants contended that any such assertion was refuted by an affidavit and supporting documents filed by Battler in the prior suit, which established, in the defendants' view,

5

that the contracting party, B. & V. Ohio, had not been merged into B. & V. Florida.

In an opinion and order issued on April 26, 2006, the district court granted the defendants' motion and dismissed the case with prejudice. In so ruling, the district court accepted the Asset Purchase Agreement accompanying the defendants' motion as the written contract referenced in the complaint, explaining that this contract was "central to Plaintiffs' claims," and noting that "Plaintiffs do not argue that the contract attached to Defendants' motion is not the contract referred to in the complaint or is otherwise inaccurate." (4/26/2006 Op. at 8 n.3, J.A. at 72.) Citing this apparent absence of any dispute regarding the contract at issue, the district court held (i) that Battler lacked standing either to redress any injuries suffered by the corporate party to this contract or to recover individually for any injuries resulting from the breach of this contract; (ii) that the other named plaintiff, B. & V. Florida, also lacked standing to sue under the contract; and (iii) that the proper party to assert a breach-of-contract claim under the Asset Purchase Agreement, B. & V. Ohio, could not be substituted into the case without destroying the court's diversity jurisdiction.

Turning to the remaining claims asserted in the complaint, the district court held that the plaintiffs' fraud claim was time-barred under Ohio law because it had not been brought within four years after the alleged fraud was or should have been discovered. Finally, the court found that the plaintiffs could not pursue a claim of unjust enrichment, in light of the complaint's allegation that the parties' relationship was governed by an

6

express agreement.

Battler now appeals, contending (i) that the district court exceeded the bounds of Fed. R. Civ. P. 12(b)(6) by considering the Asset Purchase Agreement attached as an exhibit to the defendants' motion to dismiss; (ii) that the district court erred in determining that Battler lacked standing to assert individual claims arising from or relating to the alleged agreement to sell the assets of B. & V. Distributing to Dottore Companies; and (iii) that the district court erred in ordering a dismissal with prejudice, in light of its purported determination that it lacked subject matter jurisdiction over this action.

### III.  ANALYSIS

**A.      The Standards Governing This Appeal**

"We review *de novo* a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006).[3]  In reviewing such a dismissal, we, like the district court, "must construe the complaint in the light most favorable to plaintiffs [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007).  While this standard is "decidedly liberal," it nonetheless "require[s]

---

[3]In its opinion granting the defendants' motion to dismiss, the district court recited the standards of both Rule 12(b)(1) and Rule 12(b)(6), leading to a question on appeal as to whether the court dismissed at least some of the plaintiffs' claims for lack of subject matter jurisdiction. As discussed below, the better reading of the district court's decision, in our view, is that Battler's claims were dismissed under Rule 12(b)(6) for failure to state a claim.

7

more than bare assertions of legal conclusions." *Bredesen,* 500 F.3d at 527.

In the aftermath of the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007), we have explained that a plaintiff's allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Bredesen,* 500 F.3d at 527. Moreover, the plaintiffs' "obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." 500 F.3d at 527. "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." 500 F.3d at 527.

**B.     The District Court Did Not Err in Determining that Battler Failed to State a Viable Claim for an Individual Recovery Arising from or Relating to the Alleged Sale of the Assets of the Corporate Plaintiff, B. & V. Distributing.**

Among the issues he has raised on appeal, Battler challenges the district court's determination that he lacked standing to sue for the breach of an alleged contract for the sale of the assets of the corporate plaintiff, B. & V. Distributing, to defendant Dottore Companies, or to otherwise pursue an individual recovery arising out of or relating to this transaction. As explained below, we find no error in the district court's ruling on this point, and we further conclude that this is largely dispositive of all other issues that are properly before us on appeal.

Under Ohio law, a breach-of-contract claim may be brought only by a party to the

contract or an intended third-party beneficiary. *See Thornton v. Windsor House, Inc.,* 566 N.E.2d 1220, 1223 (Ohio 1991).[4] Thus, the viability of Battler's claim in this case for an individual breach-of-contract recovery turns upon his ability to allege and prove that he is either a party to or an intended third-party beneficiary of the agreement alleged in the complaint. In arguing that he meets one or both of these criteria, Battler points to the complaint's allegations (i) that in return for all of the assets of B. & V. Distributing, the defendants agreed to make monthly payments of $8,500 "directly to Battler and/or B. & V. Florida," (12/15/2005 Complaint at ¶ 11), and (ii) that "[a]s the sole stockholder and owner of B. & V. Florida, Battler was the intended third party beneficiary of the written contract between B. & V. Florida and Dottore Companies," (*id.* at ¶ 16).

As the district court correctly held, neither of these allegations provides a basis for an individual recovery. First, even accepting the complaint's allegation that the defendants agreed to make payments "directly to Battler,"[5] the very same paragraph of

---

[4]Under the Asset Purchase Agreement that the district court accepted as the written contract referred to in the complaint, the parties' agreement was to be "construed in accordance with and governed by the laws of the State of Ohio." (Asset Purchase Agreement at ¶ 11.9, J.A. at 102.) While Battler takes issue with the district court's determination that the Asset Purchase Agreement was the contract referenced in the complaint, he seemingly agrees that this contract, whatever it might be, is governed by Ohio law. Accordingly, we, like the parties, will look to Ohio law in resolving the issue of Battler's standing to pursue an individual recovery in this case.

[5]Notably, the Asset Purchase Agreement does not include any such provision, but instead calls for payments to be made "to Seller" — defined in the agreement as "B & V Distributing, Inc., an Ohio corporation" — by checks delivered to a specified address in Pepper Pike, Ohio. (Asset Purchase Agreement at 1-2, J.A. at 93-94.) Moreover, to the extent that Battler suggests that his right to direct payment is reflected in some other written or oral agreement, we note (i) that Battler himself, through his filings in the 2004 action, identified the Asset Purchase Agreement as the parties' written contract governing the sale of B. & V. Distributing's assets to

9

the complaint confirms that the defendants were to make these payments "in return for all of the assets of B. & V. Distributing." (12/15/2005 Complaint at ¶ 11.) It is clear, then, that the alleged transaction was for the sale and purchase of ***corporate assets.*** Battler has not cited any authority for the proposition that a corporate officer or shareholder may be deemed a party to a contract for the sale of corporate assets merely because the payments were to be directed to and received by this individual.

Indeed, such a proposition would run directly counter to the "well-settled" general rule, recognized in Ohio and elsewhere, that "only a corporation and not its shareholders can complain of an injury sustained by, or a wrong done to, the corporation." *Adair v. Wozniak,* 492 N.E.2d 426, 428 (Ohio 1986); *see also NBD Bank, N.A. v. Fulner,* 109 F.3d 299, 301 (6th Cir. 1997) (recognizing as a matter of federal law that "an action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation"). This rule remains fully applicable even where, as here, the individual who seeks redress for corporate injuries is the corporation's sole shareholder. *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 603 (6th Cir. 1988).

To be sure, the courts have recognized an exception to this rule, allowing an

---

Dottore Companies; and (ii) that this agreement includes an integration clause stating that it "embod[ies] the entire agreement and understanding of the parties with respect to the subject matter hereof and supersede[s] all prior and contemporaneous letters, agreements and understandings relative to said subject matter," (*id.* at ¶ 11.2, J.A. at 101). Nonetheless, for present purposes, we accept Battler's assertion — implausible though it might be — that the parties' agreement called for direct payments from the defendants to Battler.

individual recovery in cases where "the complaining shareholder is injured in a way that is separate and distinct from [the] injury to the corporation." *Crosby v. Beam,* 548 N.E.2d 217, 219 (Ohio 1989); *see also Gaff v. Federal Deposit Insurance Corp.*, 814 F.2d 311, 315 (6th Cir. 1987); *Maloof v. BT Commercial Corp.,* No. 07-3333, 2008 WL 244552, at *3 (6th Cir. Jan. 30, 2008). Battler seemingly appeals to this exception here, evidently claiming that he suffered a separate injury as a result of the defendants' failure to make payments directly to him in accordance with the parties' alleged agreement.

Yet, this is hardly a "separate and distinct" injury that could support an individual recovery. To the contrary, it is inextricably intertwined with, and entirely derivative of, the injury allegedly suffered by B. & V. Distributing when all of its assets were transferred to Dottore Companies without defendants paying the agreed-upon purchase price. Battler's purported right to receive this payment was not an obligation independently owed to him by the defendants, but instead was entirely contingent upon their receipt of B. & V. Distributing's corporate assets. Likewise, the injury inflicted when the defendants failed to make the required payments was not felt by Battler alone but was shared by the corporation, which allegedly lost all of its assets without receiving anything in return. Under these circumstances, "any injury [Battler] may have suffered as a consequence of the damage done to his corporation[] is derivative," and does not give rise to an individual cause of action. *Maloof*, 2008 WL 244552, at *3; *see also Adair,* 492 N.E.2d at 428 (distinguishing between an injury independently suffered by an

11

individual shareholder and "an injury which indirectly affects the shareholders or affects them as a whole"); *Canderm Pharmacal,* 862 F.2d at 603 (explaining that the "corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, . . . has a right to recover[]" for injuries to its business or property, "even though in an economic sense real harm may well be sustained" by such individuals in the form of "reduced earnings, lower salaries [or] bonuses, injury to general business reputation, or diminution in the value of ownership" (internal quotation marks and citations omitted)).

Neither do the complaint's allegations suffice to confer upon Battler the status of an intended third-party beneficiary. As Battler recognizes, and as we have explained, "[t]o be an intended beneficiary, as opposed to an incidental beneficiary, either the performance of the promise must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances must indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Midkiff v. Adams County Reg'l Water Dist.,* 409 F.3d 758, 768 (6th Cir. 2005) (internal quotation marks and citations omitted). In arguing that he qualifies as an intended beneficiary under this rule, Battler again points to the complaint's allegation that the defendants promised to make payments directly to him in exchange for the assets of B. & V. Distributing.

Yet, as is clear from *Midkiff*'s statement of the governing law, and as we have more recently confirmed, *see Homfeld II, L.L.C. v. Comair Holdings, Inc.*, No. 01-1151,

12

53 F. App'x 731, 734 (6th Cir. Dec. 3, 2002), it is the intentions of and obligations owed by the *promisee* that determine whether a third party is an intended beneficiary of the promised performance. Regardless of whom *the defendants* might have intended to benefit through their alleged promise to pay Battler for the corporate assets of B. & V. Distributing, and regardless of the obligation that *the defendants* might have owed to Battler as a result of this alleged promise, the complaint is devoid of any allegations that *B. & V. Distributing* — which, after all, was the "promisee" of the relevant promise to pay — either had a pre-existing obligation to pay the proceeds of the sale of its assets to Battler or evidenced any intention to give Battler the benefit of the defendants' promised performance. Indeed, any such purported intention would be directly at odds with the law's recognition that while shareholders have "an ownership interest" in a corporation, they do not "own the corporation's property." *Owens v. Commissioner of Internal Revenue,* 568 F.2d 1233, 1238 (6th Cir. 1977). Absent allegations to the contrary, we decline to assume that B. & V. Distributing intended for one of its shareholders, as opposed to the corporation itself, to be the beneficiary of the sale of corporate assets.

Consequently, the allegations of the complaint provide no basis for concluding that Battler was either a party to the agreement for the sale and purchase of B. & V. Distributing's assets or an intended third-party beneficiary of this agreement. It follows that the district court was correct in its determination that Battler failed to state a viable claim for an individual recovery arising out of the defendants' alleged breach of this

13

agreement.[6]

## C. The District Court Did Not Err in Dismissing Battler's Claims with Prejudice.

As his final issue on appeal, Battler contends that the district court erred in dismissing his claims with prejudice, where the lower court's determination that he lacked "standing" purportedly was tantamount to a dismissal for lack of subject matter jurisdiction. We reject this argument, finding that it rests upon an improper characterization of the term "standing" as used by the district court in this case.

It is true, of course, that a party must have standing under Article III of the U.S. Constitution in order to invoke the jurisdiction of the federal courts. *See Allen v. Wright,* 468 U.S. 737, 750-51, 104 S. Ct. 3315, 3324 (1984); *Hyman v. City of Louisville,* No. 01-5531, 53 F. App'x 740, 742-43 (6th Cir. Dec. 9, 2002). It is further true that a lack of "standing" in this constitutional sense, like the lack of subject matter jurisdiction

---

[6]In light of our ruling on this point, a number of other issues raised by Battler on appeal may be resolved with little or no discussion. First, we need not decide whether the district court erred in considering the Asset Purchase Agreement attached as an exhibit to the defendants' motion to dismiss. Regardless of whether the complaint's allegation of a "[w]ritten and signed contract" is meant to refer to this or some other written agreement — and, notably, Battler has never produced any other document that might meet this description in either of his two lawsuits — we have nonetheless affirmed the district court's ruling that Battler cannot pursue an individual recovery under any such agreement for the sale of B. &. V. Distributing's corporate assets. Similarly, because Battler lacks standing to redress corporate injuries, and because he has not identified any separate and distinct injuries that he alone has suffered, Battler may not pursue an individual recovery under the fraud and unjust enrichment theories advanced in the complaint. In any event, we find no error in the district court's disposition of these claims on different grounds. Finally, we do not address the district court's resolution of the claims brought by Battler's fellow plaintiff, B. & V. Distributing, because Battler alone, and not B. & V. Distributing, has appealed from the district court's ruling.

14

generally, mandates a dismissal without prejudice. *Hyman,* 53 F. App'x at 744.

We do not view the district court's decision as resting upon Battler's lack of "standing" in this constitutional sense. As we have explained, the dispositive question here is whether Battler has stated viable breach-of-contract and related claims under Ohio law arising from the sale of assets of a corporation of which he is the president and sole shareholder. The district court held, and we have now affirmed, that Battler cannot pursue such claims, where neither his status as a company official and shareholder nor his alleged right to receive the payments for the sale of the company's assets is sufficient to confer "standing" — *i.e.,* a right to an individual recovery — under the state law that governs these claims. Under these circumstances, the district court properly concluded that Battler had failed to state a breach-of-contract claim upon which relief could be granted to him, and this disposition under Rule 12(b)(6) properly resulted in a dismissal with prejudice. *See Pratt v. Ventas, Inc.,* 365 F.3d 514, 522 (6th Cir. 2004).[7]

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM in all respects the district court's April 26, 2006 opinion and order granting the defendants' motion to dismiss and dismissing this case with prejudice.

---

[7]As the defendants point out, a dismissal with prejudice is appropriate here, because there is no prospect that Battler might be able to cure the defects in his claims by pursuing them in some other court. *See Pratt,* 365 F.3d at 523. Rather, the very same flaws that defeated his claims in this case would continue to exist in any other forum in which he sought to pursue them.