**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0409n.06

**Nos. 09-3973, 09-4033, 09-4037, 09-4040, 09-4066**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 24, 2011*

LEONARD GREEN, Clerk

| | |
|---|---|
| WILLIAM H. MALOOF, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| | ) On Appeal from the United States |
| v. | ) District Court for the Northern |
| | ) District of Ohio |
| LEVEL PROPANE, INC., et al., | ) |
| | ) |
| Appellees. | ) |

Before: BOGGS, SUHRHEINRICH, and STRANCH, Circuit Judges.

BOGGS, Circuit Judge.

In these consolidated appeals, William H. Maloof ("Maloof") argues that 1) the bankruptcy court erred in denying his second motion to vacate the conversion of an involuntary Chapter 7 bankruptcy to a voluntary Chapter 11 bankruptcy; 2) the bankruptcy court erred in granting Appellees' motion for summary judgment in an adversary proceeding against Maloof; 3) the bankruptcy court erred in granting Appellees' motion to dismiss Maloof's counterclaim in the adversary proceeding; 4) the bankruptcy court erred in affirming a compromise and settlement agreement, which resulted in the dismissal of a lawsuit brought by the debtor companies against Maloof and his former business partner; and 5) the bankruptcy court erred in ordering Maloof to turn over certain electronic records to Appellees. Because these arguments are all without merit or moot, we affirm the bankruptcy court's orders.

Nos. 09-3973, 09-4033, 09-4037, 09-4040, 09-4066
*Maloof v. Level Propane, Inc., et al.*

# I

Maloof has come before this court twice before with similar grievances. We have previously

laid out facts relevant to the bankruptcy proceeding in question:

> Plaintiff, William H. Maloof, was the sole shareholder, director and CEO of Level Propane Gases, Inc., and Park Place, Inc. Level Propane was a propane distribution business operating in the Great Lakes region, and headquartered in Westlake, Ohio. Park Place was a parking lot facility at Cleveland Hopkins Airport in Brookpark, Ohio.

*Maloof v. BT Commercial Corp.*, 261 F. App'x 887, 887 (6th Cir. 2008) (holding that Maloof lacked

standing to bring an action on behalf of his corporations).

> On June 6, 2002, various creditors filed involuntary bankruptcy proceedings under Chapter 7 of the Bankruptcy Code against Level, Park Place Management, Inc., The Park Place Companies, Inc., Over-Flo Lot, Inc., Level Energy Group, Inc., and WHM Enterprises, Inc. (collectively, the "Debtors"). These cases were subsequently consolidated and converted to proceedings under Chapter 11 of the Bankruptcy Code.
>
> On April 30, 2003, the bankruptcy court, on motion from the United States Trustee, ordered the appointment of an examiner, Professor G. Ray Warner (the "Examiner"), for the consolidated Chapter 11 cases. Maloof, Level's principal shareholder and former Chief Executive Officer, had filed an earlier motion for the appointment of an examiner, and that motion was before the bankruptcy court at the same time. In granting the United States Trustee's motion for an examiner, the bankruptcy court denied Maloof's motion as moot. On June 6, 2003, the Examiner submitted his report to the bankruptcy court. Maloof did not file any objections to this report.
>
> Two and one half years later, on January 31, 2006, Maloof filed a motion styled "Motion to Reopen Examiner's Investigation and for Substitute Examiner" (the "Original Motion"). In this motion, Maloof alleged that Debtors had engaged in a systematic campaign of document destruction which compromised Debtors' financial balance sheet and customer records. After conducting an evidentiary hearing, the bankruptcy court denied the motion on June 26, 2006, noting that Maloof had not provided sufficient evidence to support his allegations and finding that Maloof had failed to show cause for reopening the Examiner's investigation or for appointing a new examiner. Maloof did not file any motion for reconsideration or notice of appeal with respect to this ruling.

Instead, on July 12, 2006, Maloof filed a motion styled "Renewed and Reinstated Motion to Reopen Examiner's Report and for Appointment of Substitute Examiner" (the "Renewed Motion"). In this Renewed Motion, Maloof asserted the same allegations and sought the same relief as requested in the Original Motion, but claimed that he had "newly discovered evidence" to justify the Renewed Motion. This "newly discovered evidence," however, consisted of e-mails and affidavits that had been previously filed with the bankruptcy court in support of other motions. On August 2, 2006, Level filed a response to Maloof's Renewed Motion along with its own motion seeking sanctions, in the form of attorney's fees and costs, against Maloof for the filing of the Renewed Motion.

On November 28, 2006, after reviewing the alleged "new evidence" presented by Maloof, the bankruptcy court denied the Renewed Motion. The bankruptcy court found that Maloof had failed to present any "meaningful new evidence to support his claims" and thus had not shown sufficient cause for reopening the Examiner's report or for appointing a new examiner. Moreover, the bankruptcy court explicitly noted that Maloof's motion had frustrated the doctrine of finality by "seeking the same relief [that Maloof] has sought [unsuccessfully] on two prior occasions."

*Maloof v. Level Propane Gases, Inc.*, 316 F. App'x 373, 374-75 (6th Cir. 2008) (alterations in original) (upholding an award of sanctions for vexatious litigation).

Maloof also sought to unravel the bankruptcy proceeding in other ways. On June 6, 2006—three years after the filing of the Examiner's report—Maloof sought to vacate the Agreed Final Order of June 11, 2002 ("the Conversion Order"), which had converted the Chapter 7 bankruptcy proceeding to one under Chapter 11. He argued that the Order (which he signed in 2002) was procured by fraud on the court. In particular, he alleged that the Debtors' management had no intention of preserving the assets of the estate. This claim, like his motions to reopen the examiner's investigation, was based on allegations that business records were destroyed or manipulated. In denying the motion, the bankruptcy court noted that the motion relied upon "substantially the same evidence" as his first motion to reopen the examiner's investigation, and that the broader accusations had already been dispelled by the Examiner's report.

Undeterred, Maloof moved to disqualify Debtors' counsel on November 14, 2006, claiming a conflict of interest. Again, the bankruptcy court noted that the Examiner's report had specifically investigated this claim, and found it baseless. The court denied the motion, holding that it was barred by the doctrines of laches and finality, and was without merit.

**Issue 1: Maloof's Second Motion to Vacate**

On September 5, 2007, Maloof filed another motion to vacate the Conversion Order, as well as the June 27, 2003 Sale Order which approved the sale of Level Propane as a going concern ("Second Motion to Vacate"). Counting his two attempts to reopen the Examiner's report and the motion to disqualify counsel, this Second Motion to Vacate was Maloof's fifth attempt to undermine the bankruptcy proceeding. The bankruptcy court noted as much, before holding that the allegations were "simply a recasting of the arguments [Maloof] has repeatedly and unsuccessfully made before this Court and on appeal," and that the motion was therefore barred by the doctrine of finality. The court also held that the motion was barred by the doctrine of laches and that, in any event, Maloof had not shown his entitlement to extraordinary relief under Rule 60(b)(6). On appeal before the district court, that order was upheld. Maloof timely appealed.

**Issues 2 & 3: Summary judgment for the Debtors and Maloof's counterclaim**

In a different strategy, Maloof also filed a 2006 action in the United States District Court for the Northern District of Ohio, seeking damages for injury to his corporations. In February 2007, the district court dismissed this action under Federal Rule of Civil Procedure 12(b)(6) because, as an individual, Maloof could not assert claims for loss on behalf of his corporations. We affirmed that ruling. *Maloof*, 261 F. App'x at 889.

In response to the dismissal, Maloof filed a new action in federal district court in June 2007. In that complaint, he advanced substantially the same allegations, but framed them as derivative claims.[1] Less than a month later, on July 12, 2007, the Debtors filed an adversary proceeding in bankruptcy court against Maloof, claiming that the June 2007 action was a usurpation of the Debtors' estate and violated the automatic stay imposed by the bankruptcy court. Maloof counterclaimed that the entire bankruptcy was a fraud upon the court. In response, the Debtors filed a motion for summary judgment on their claim and a motion to dismiss Maloof's counterclaim. The bankruptcy court granted both motions, and the district court affirmed. Maloof timely appealed.

**Issue 4: The Settlement Agreement**

On June 3, 2004, the Debtors and the official committee of unsecured creditors ("the Committee") filed a complaint in bankruptcy court against Maloof and Walter Himmelman, who had also been involved in the management of the Debtors prior to the bankruptcy petition. The complaint alleged that both Maloof and Himmelman had breached their fiduciary duties to the Debtors. Both defendants denied the allegations. Himmelman eventually sought permission of the bankruptcy court to recover his defense costs in the proceeding from a director and officer liability insurance policy that had been issued by National Union Fire Insurance Co. ("National Union"). Maloof joined in the motion. Although holding that the liability policy was property of the Debtors' estate, the bankruptcy court granted the motion with respect to both defendants.

---

[1] In March 2008, the district court also dismissed this action because Maloof did not obtain permission from the bankruptcy court to prosecute a derivative action on behalf of the Debtors. Maloof appealed to the Sixth Circuit, where that case is pending.

After a great deal of expensive discovery, Himmelman and National Union agreed to mediate the claim with the Debtors and the Committee. Maloof, on the other hand, refused to take part in the mediation discussions. Himmelman, National Union, the Debtors, and the Committee eventually reached a settlement that provided as follows: National Union would pay the Debtors $1.5 million and, in exchange, the adversary proceeding would be dismissed with prejudice. Under the settlement, Himmelman, National Union, and Maloof would be completely released—and no more money could be recovered from the National Union liability policy. The bankruptcy court initially rejected the settlement, sustaining Maloof's objection that an injunction against third-party claims, which National Union had demanded, exceeded the bankruptcy court's jurisdiction. National Union agreed to abandon this term, and the settlement was approved on March 3, 2008 over Maloof's objections. The bankruptcy court found that the settlement would not cause Maloof to incur any personal liability or otherwise suffer prejudice. Maloof appealed to the district court, which affirmed the bankruptcy court's order. He now argues on appeal that the settlement violated his due process rights.

**Issue 5: The email turn overs**

In June 2008, Maloof filed a motion under Federal Rule of Civil Procedure 60(b)(2) to vacate the bankruptcy court's decision denying his Second Motion to Vacate, claiming that he had newly discovered evidence that certain individuals had conspired to wrongfully seize control of Level Propane by hiding its true value as a going concern. This newly discovered evidence consisted of a series of outrageously incriminating emails allegedly discovered on back-up tapes of Level's server. The Debtors moved for expedited discovery, asking Maloof to turn over the server tapes to

a company specializing in forensics so that the legitimacy of the emails could be determined. The bankruptcy court granted the motion in part, ordering that Maloof turn over all electronic media and certain documents. The district court affirmed, and Maloof timely appealed.

Through all these motions, Maloof's primary accusation has remained largely unchanged: that the Chapter 11 bankruptcy was a conspiracy to seize Level Propane at a sharply reduced price. He argues primarily that, after the bankruptcy filing, certain individuals within the management of Level concealed and destroyed Level's customer records in an attempt to make it appear less valuable. He also argues that these individuals frustrated attempts to sell the company on the open market, and ultimately delivered it to its eventual buyer for a dramatically inadequate price.

## II

"We directly review the bankruptcy court's decision, and not the district court's decision below." *In re Parker*, 499 F.3d 616, 620 (6th Cir. 2007) (citing *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 130 (6th Cir. 1995)). We review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Ibid.* (citing *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir. 2000)).

## A

On February 28, 2008, the district court issued a Memorandum Opinion and Order denying Maloof's Second Motion to Vacate on three grounds: the motion was barred by the doctrine of finality, it was barred by the doctrine of laches, and Maloof failed to show extraordinary circumstances to warrant relief under Federal Rule of Civil Procedure 60(b)(6). On appeal, Maloof challenges all three conclusions.

We agree with the ruling below that Maloof's Second Motion to Vacate was barred by the doctrine of finality. On multiple prior occasions, the bankruptcy court considered and rejected Maloof's theory of fraud on the court, leading us in a prior appeal to affirm the imposition of sanctions. *See Maloof*, 316 F. App'x at 377. Maloof argues that he has adduced "substantial new evidence" such that the doctrine of finality is inapplicable to him. See *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (noting that exceptions to the doctrine of finality exist where "there is substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice" (internal quotation marks omitted)). However, as we explain, we find Maloof's new evidence unpersuasive.

Even considering the evidentiary submissions Maloof attached to the Second Motion to Vacate, we agree with the bankruptcy court that Maloof failed to demonstrate circumstances to warrant relief. Typically, Federal Rule of Civil Procedure 60 is a litigant's only avenue for altering a final judgment. Indeed, Maloof brought both his First Motion to Vacate and his Second Motion to Vacate under Rule 60(b)(6). However, Rule 60 also provides a savings clause, which allows a judgment to be attacked for fraud on the court regardless of the passage of time. Fed. R. Civ. P. 60(d)(3); *see Marcelli v. Walker*, 313 F. App'x 839, 842 (6th Cir. 2009). Under either Rule 60(b)(6) or an independent action in equity for fraud on the court, we review for abuse of discretion. *See Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001); *Barrett v. Sec'y of Health & Human Servs.*, 840 F.2d 1259, 1263 (6th Cir. 1987).

To establish fraud on the court, Maloof was required to show conduct (1) by an officer of the court; (2) directed to the "judicial machinery" itself; (3) which was intentionally false, willfully blind to the truth, or in reckless disregard of the truth; (4) which was a positive averment or a concealment when under a duty to disclose; and (5) which deceived the court. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993). Maloof's counsel conceded at oral argument that the fraud on the court claim was based entirely on representations the debtors made to the bankruptcy court that the sale price for Level Propane was fair and reasonable. Maloof attempted to show through the documents attached to his Second Motion to Vacate that the sale price for Level Propane was not fair and reasonable because the debtors fraudulently devalued the company in order to sell it at a reduced price.

Having examined all of the exhibits Maloof submitted, we conclude, as did the bankruptcy court, that these documents, individually or collectively, fail to demonstrate fraud on the bankruptcy court as required by *Demjanjuk.* In light of the above, we are satisfied that the bankruptcy court did not abuse its discretion in denying Maloof's Second Motion to Vacate. Based on these rulings, we do not determine whether the doctrine of laches is applicable to the Second Motion to Vacate.

**B**

With regard to the adversary proceeding, the Debtors' cause of action against Maloof alleges that he willfully violated the automatic stay by bringing a district court action on their behalf. A petition filed under sections 301, 302, or 303 of the Bankruptcy Code operates as an automatic stay. 11 U.S.C. § 362(a). In this case, Maloof admits that such a stay was in operation, but claims that the Debtors abandoned their legal causes of action by asserting on the record that they would not

prosecute them. As an affirmative defense, Maloof also argues that the entire bankruptcy was the product of a fraud on the court. The bankruptcy court correctly rejected these arguments.

A trustee may abandon estate property "that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). However, according to § 554(a), such an abandonment must be made, "[a]fter notice and a hearing." Likewise, Federal Rule of Bankruptcy Procedure 6007 directs that:

> [T]he trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection . . . . If a timely objection is made, the court shall set a hearing on notice . . . .

Thus, for Maloof to succeed, it must be the case that the Debtors gave adequate notice of their intent to abandon the causes of action.

Maloof's entire abandonment claim therefore hinges on whether the Debtors provided notice within the meaning of Rule 6007 and § 554(a). To support his argument, Maloof points to a letter from Debtors' counsel in response to Maloof's demand that they bring a lawsuit. That letter reads in part:

> [A]t no point in your correspondence do you identify those causes of action, enumerating instead instances of what Mr. Maloof characterizes as the "actionable conduct of the Bank Group." It is therefore difficult to determine what "claims" Mr. Maloof believes should be "preserve[d]" or to ascertain the "limitations" that Mr. Maloof believes to be "fast approaching." As a result, we must question whether Mr. Maloof's demand is tendered in good faith . . . .
> . . . .
> Level does not believe that it has a good faith basis for commencing an action against the Bank Group. Nor does it believe that the significant costs attendant to the prosecution of such an action could be justified in light of what it finds to be the speculative and, at best, negligible likelihood of an outcome favorable to Level.

The bankruptcy court noted that the letter, although filed on the record, does not contain an abandonment request or a service certification in accordance with Local Bankruptcy Rules 6007-1 and 9013-3.[2] Further, the letter is merely a rejection of Maloof's demand, not a clear abandonment. It emphasizes that the Debtors found Maloof's demand unclear and makes no reference to any specific cause or causes of action that the Debtors intended to abandon. It therefore does not constitute a proper abandonment, and we affirm the bankruptcy court on this issue.

Maloof also argued before the bankruptcy court that he did not violate the stay because the entire bankruptcy was a fraud on the court. Maloof articulated this argument as both an "affirmative defense" and a "counterclaim." In its January 29, 2008 bench ruling on the motion for summary judgment, the bankruptcy court deferred any discussion of the fraud accusation because the substance of the claim was identical to other pending motions. In granting summary judgment without considering the argument, the bankruptcy court effectively struck the defense and considered it only

---

[2]Under Local Bankruptcy Rule 6007-1, to abandon property, "[t]he movant shall file a certificate of service pursuant to LBR 9013-3 with the request for abandonment." Rule 9013-3 requires that the certificate of service shall: "(1) Identify, with specificity, the pleading or other paper served; (2) State the date and method of service; (3) Identify, by name and address, each entity served; and (4) Contain or refer to an accompanying notice as required by LBR 9013-1(a)." Rule 9013-1(a) provides for a certificate of service and:

> a notice to all persons entitled to notice that any objection must be filed within 14 days, or such other time as specified by applicable Federal Rule of Bankruptcy Procedure or statute or as the Court may order, from the date of service as set forth on the certificate of service, if the relief sought is opposed, and that the Court is authorized to grant the relief requested without further notice unless a timely objection is filed.

The Debtors' letter was filed with the court, but contains only the usual electronic certificate of service: "The foregoing *Praecipe* was filed electronically, this 5th day of June, 2007, and was thereby served electronically on all parties registered with the Court's ECF system." It does not comply with the specific notice provisions of the Local Bankruptcy Rules for abandonment laid out above.

as a counterclaim. Doing so may have been improper. *Cf. Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 840 (Fed. Cir. 2009) (holding that it was error for the district court to consider an argument as only a counterclaim when it was properly pled as both a counterclaim and an affirmative defense). Although there may have been a lack of clarity in the bankruptcy court's bench ruling of January 29, 2008, the error, if any, is harmless. In subsequent orders entered on February 28, 2008, both in the adversary action (No. 07-1278) and in the bankruptcy court proceeding (No. 02-16172) and on March 6, 2008, in the adversary action (No. 07-1278), the bankruptcy court considered and rejected Maloof's bankruptcy fraud argument both as an affirmative defense and as a counterclaim. Therefore, Maloof did not suffer any prejudice due to the bankruptcy court's bench ruling.

## C

On March 6, 2008—a little more than a month after granting the Debtors' motion for summary judgment—the bankruptcy court ruled on Maloof's counterclaim. The court noted that, "Mr. Maloof's counterclaim is identical to the relief sought in his [Second Motion to Vacate]. That Motion was denied by this Court . . . . [therefore,] Plaintiff's Motion to Dismiss is hereby granted for the reasons set forth in this Court's February 28, 2008 Memorandum of Opinion and Order." On appeal, Maloof does not appear to contend that his counterclaim was distinguishable from the Second Motion to Vacate. In fact, he spends much of the appellate brief filed in this case attacking the bankruptcy court's ruling with respect to the Second Motion to Vacate. Having already rejected his argument with regard to the Second Motion to Vacate, we now reject this claim for the same reasons.

**D**

Maloof claims that in approving the settlement between Himmelman, National Union, the Debtors, and the Committee, the bankruptcy court violated his due process rights. We typically review a bankruptcy court's decision to approve a settlement for abuse of discretion. *Lyndon Property Ins. Co. v. Katz*, 196 F. App'x 383, 386 (6th Cir. 2006) (citing *In re Monus*, 63 F. App'x 215, 216 (6th Cir. 2003); and *In re Bard*, 49 F. App'x 528, 530 (6th Cir. 2002)). However, to the extent that this appeal turns on an interpretation of constitutional law, we review de novo. *See Mingus v. Butler*, 591 F.3d 474, 481 (6th Cir. 2010).

The bankruptcy court properly rejected Maloof's due process argument by pointing to the fact that the settlement agreement does not deprive him of any rights or property. Although Maloof claimed that he would not be able to vindicate his pre-petition conduct, this grievance is not cognizable in a due process claim. *See Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999) ("The Supreme Court made clear in [*Paul v. Davis*, 424 U.S. 693, 701 (1976)], that reputation alone is not a constitutionally protected liberty or property interest. Only where the stigma of damage to a reputation is coupled with another interest, such as employment, is procedural due process protection triggered.") (internal citation moved).

Therefore, on appeal before this court, Maloof also claims that the settlement agreement curtailed his litigation rights. In support, he points to a provision of the settlement in which the Debtors, the Committee, and Himmelman reserve their rights and remedies against Maloof. In pertinent part, that provision reads:

> The Release provided herein is not intended to be, and should not be construed as, a waiver or limitation of (1) the ability of WHM, the Creditors' Committee and/or Himmelman to seek to enjoin Maloof from taking any action against them, including rights and remedies to enforce any such injunction or for violation of any such injunction, or (2) to raise any defenses, including the affirmative defenses of accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, privilege, release, *res judicata*, statute of frauds, statute of limitations and/or waiver, in defense of any claims, demands or causes of action, known or unknown, arising at law, in equity or otherwise, that have been or may be asserted by Maloof against them.

This argument is without merit. The settlement simply provides that the Debtors and Unsecured Creditors Committee preserve their right to pursue all defenses they may have in the event Maloof brings suit against them. Their reservation of certain preexisting rights and remedies in the settlement agreement did not change the universe of potential legal possibilities for Maloof. Because Maloof does not have a due process interest in his reputation to vindicate, *Paul*, 424 U.S. at 701; *Cutshall*, 193 F.3d at 479, we affirm the bankruptcy court's order approving the settlement.

**E**

The bankruptcy court ordered Maloof to turn over electronic media and print documents, allegedly taken from Level's server, pursuant to 11 U.S.C. § 542(e). Section 542(e) provides that, "the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." Maloof appealed.

Shortly after this ruling, the bankruptcy court dismissed Maloof's motion to vacate the Second Motion to Vacate (the subject of this discovery), holding that it lacked jurisdiction to revisit an order that was being reviewed on appeal. Eight days after Maloof was required to turn over the

tapes, he filed a motion for stay pending appeal.  The Debtors filed a brief in opposition, and the bankruptcy court denied the stay.  At oral argument, counsel for the Debtors stated that the discovery had never been turned over and that, because the underlying action had been dismissed and there was no appeal, no further action had been taken to obtain the discovery.  Both sides agree that this issue is now moot, and therefore we need not consider it.

### III

For all these reasons, we **AFFIRM** the bankruptcy court's orders.