**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0389n.06

**Nos. 10-1315, 10-1397**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Apr 10, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GENERAL MEDICINE, P.C., | ) | |
| | ) | |
| Plaintiff-Appellant/Cross-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HORIZON/CMS HEALTH CARE | ) | EASTERN DISTRICT OF MICHIGAN |
| CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| HEALTHSOUTH CORPORATION, | ) | |
| | ) | |
| Intervenor-Appellee/Cross-Appellant. | ) | |

Before: BATCHELDER, Chief Judge; COLE and COOK, Circuit Judges

COOK, Circuit Judge. General Medicine, P.C. ("General"), a Michigan-based medical services provider, appeals the district court's fraud-on-the-court finding, which set aside a five-year-old $376-million consent judgment between General and Defendant Horizon/CMS Health Care Corporation ("Horizon"). Intervenor HealthSouth Corporation ("HealthSouth") cross-appeals the district court's adverse judgment on the timeliness of its motion for relief under Federal Rule of Civil Procedure 60(b), and seeks an order closing the case. For the following reasons, we reverse in part, affirm in part, and reinstate the consent judgment.

I.

This matter began as a contract dispute between General and Horizon in the Eastern District of Michigan. Under the parties' contract, General provided "medical director" services to certain nursing homes managed by Horizon. Horizon terminated the agreement in 1996 before the end of the contract term, and General sued. HealthSouth acquired Horizon in 1997 during the pendency of this suit, but never became a party. In 1999, the district court stayed and administratively closed the case to facilitate a criminal investigation of the two Horizon facilities. In 2001, while the case remained closed, HealthSouth sold all of Horizon's stock to Meadowbrook Healthcare Corporation ("Meadowbrook"), and Meadowbrook assumed responsibility for defending Horizon in the contract dispute with General. For reasons not germane to this appeal, General believes that the sale of Horizon to Meadowbrook constituted a fraudulent conveyance that enabled Healthsouth to shed Horizon's liabilities while keeping most of its assets.

The district court reopened the case in April 2003 following the conclusion of the criminal investigation. Thereafter Meadowbrook replaced Horizon's defense counsel and began settlement negotiations with General. According to the parties' representations, Meadowbrook had limited funds (approximately $25 million) with which to settle a number of claims against Horizon, including the case brought by General. General and Horizon entered into a settlement agreement a year later in April 2004 (R. 244, Ex. R ("Settlement Agreement")), whereby Horizon/Meadowbrook agreed: (1) to enter into a consent judgment with Horizon "in an amount to be determined prior to entry" (*id.* ¶ 2); (2) to pay General $300,000 (*id.* ¶ 6(i)); and (3) to transfer to General "any assets

or property . . . awarded or returned to Horizon or Meadowbrook, as a result of any action brought by [General] against HealthSouth" (*id.* ¶ 6(ii)). In return, General promised not to enforce the anticipated consent judgment against Horizon or Meadowbrook beyond the $300,000 payment specified in paragraph 6(i), but the settlement agreement stipulated that it did "not releas[e] Horizon and/or Meadowbrook from liability to [General] arising out of the [l]awsuit or the [c]onsent [j]udgment." (*Id.* ¶¶ 4–5.)

Counsel for both General and Horizon presented a $376-million draft consent judgment to the district court on May 3, 2004, and the district court endorsed it. (R. 232.) The consent judgment ordered Horizon to pay General $376 million plus 10% annual interest.[1] Notably, the consent judgment did not reference the parties' confidential settlement agreement, and thus did not reveal that General sought to recover all but $300,000 of the $376-million judgment from non-party HealthSouth. Shortly after entry of the consent judgment, General (now a judgment-creditor of Horizon) filed a fraudulent conveyance action against HealthSouth in Alabama. HealthSouth

---

[1]The consent judgment states in pertinent part:

> This matter having come before the Court on Plaintiff's Complaint for breach of contract, and the parties through their respective attorneys, having stipulated to the entry of this Judgment, and the Court being more fully advised in the premises:

> NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that Defendant [HORIZON] shall pay to Plaintiff [GENERAL] the sum of [$376 million], plus interest on the judgment from the date of entry until paid at the rate of [10%] per annum.

eventually learned of the consent judgment in the Michigan action, moved to intervene in that case, and filed a Rule 60 motion to set aside the 2004 consent judgment in October 2008.

The district court received evidence, heard oral argument, and granted HealthSouth's motion by Opinion and Order of May 21, 2009. *See Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, No. 96-72624, 2009 WL 1447346 (E.D. Mich. May 21, 2009) ("May 2009 Order"). The district court denied relief under Rule 60(b)(3), finding HealthSouth's claim untimely, but set aside the consent judgment pursuant to subsection (d)(3), finding that counsel for General and Horizon had committed fraud on the court. *Id.* at *4–6. Although the district court recognized that "corporations do not generally present their settlement agreements to the court for approval," *id.* at *4, the court reasoned that the non-adversarial nature of the consent judgment's damages assessment deserved heightened scrutiny, *id.* at *5 (citing *Continental Cas. Co. v. Westerfield*, 961 F. Supp. 1502, 1505 (D.N.M. 1997)), and the court held that counsel defrauded the court by failing to disclose the Horizon-friendly payment terms of the settlement agreement when they presented the consent judgment, *id.* at *5–6. Citing a Virginia district court case that applied a constructive-fraud theory of fraud on the court, *see Spence-Parker v. Md. Ins. Grp.*, 937 F. Supp. 551, 563 (E.D. Va. 1996) (setting aside a consent judgment as collusive), the district court stated that the parties' non-disclosure "resulted in th[e] court placing its imprimatur on a consent judgment, the primary purpose of which was to ambush a non-party, HealthSouth," and found that this conduct "impugned" the "integrity of the court and the judicial process." May 2009 Order at *5. Having set aside the consent judgment, the district court instructed General and Horizon to "consult each other and th[e] court's case manager to determine what further proceedings are appropriate." *Id.* at *6.

After the May 2009 Order, Horizon moved for clarification and instruction, General moved to enforce the settlement agreement via entry of a new consent judgment, and HealthSouth moved to dismiss on the grounds that Horizon had satisfied its obligations under the settlement agreement by paying General $300,000. By Opinion and Order of February 25, 2010, the district court held that the settlement agreement between General and Horizon remained in effect, but resolved that the settlement agreement's severance clause precluded entry of another consent judgment. Applying the remaining terms of the settlement agreement, the district court concluded that Horizon's payment of $300,000 to General satisfied its obligations under the settlement agreement, and thus "no further action is required." *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, No. 96-72624, 2010 WL 726963, at *1–2 (E.D. Mich. Feb. 25, 2010) ("February 2010 Order").

General appealed both the May 2009 and February 2010 Orders on March 9, 2010, and HealthSouth cross-appealed. The parties report that the Alabama courts have stayed the fraudulent conveyance action pending the outcome of these proceedings.

## II.

As a threshold matter, HealthSouth renews its challenge to the timeliness of General's appeal under Federal Rule of Appellate Procedure 4(a)(1)(A). The Rule's 30-day limit for filing appeals in civil cases "is mandatory and jurisdictional." *Intera Corp. v. Henderson*, 428 F.3d 605, 611 (6th Cir. 2005) (internal quotations marks and citation omitted). As before, HealthSouth argues that the May 2009 Order constituted a final judgment for purposes of appeal, and thus reasons that this court has no jurisdiction to review General's appeal filed nine months later, after the issuance of the

February 2010 Order. A motions panel of this court previously denied HealthSouth's motion to dismiss, finding that "the appealability of the May 2009 order is inextricably intertwined with the overall validity of the orders challenged on appeal, resolution of [which] . . . requires a merits determination." (Order of July 9, 2010.) Having reviewed the May 2009 and February 2010 Orders and related proceedings, we find that General properly and timely appealed the February 2010 Order.

Under 28 U.S.C. § 1291, federal appeals courts have jurisdiction "of appeals from all final decisions of the district courts of the United States." A final, appealable decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see also In re Saffady*, 524 F.3d 799, 802 (6th Cir. 2008). Here, the May 2009 Order did not end the litigation leaving nothing but execution, as required for a final judgment. Rather, it expressly left the door open for further proceedings on the issue it decided, instructing the parties to consult with the case manager to determine how to proceed after the vacatur of the consent judgment. Indicative of the matter's unresolved status, all three parties, including intervenor HealthSouth, filed responsive motions to the May 2009 Order. The district court's February 2010 Order viewed these motions as consistent with the instructions of the May 2009 Order and granted *clarification*, explaining that the prior order left the settlement agreement intact, and that the settlement agreement's terms precluded the entry of a new consent judgment. February 2010 Order at *1–2.

Nevertheless, HealthSouth argues the finality of the May 2009 Order because the underlying judgment—the consent judgment it vacated—constituted a final judgment. For support, HealthSouth

relies on this court's decision in *Mallory v. Eyrich*, which deemed final and appealable a Rule 60(b) order setting aside a Rule 68 judgment. 922 F.2d 1273, 1277 (6th Cir. 1991); *see also Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 263 n.7 (1978) (suggesting that parties may timely appeal a Rule 60(b) order under Federal Rule of Appellate Procedure 4(a)). But *Mallory* does not speak to the type of order issued in this case—a fraud-on-the-court judgment issued under the court's inherent powers—and it does not stand for the proposition that *any* Rule 60 order starts the limitations period for filing an appeal, regardless of whether that order satisfies the *Coopers* finality standard. Indeed, *Mallory* purported to apply the *Coopers* finality standard, 922 F.2d at 1276–77, and on other occasions we have rejected claims that Rule 60 orders constitute final judgments, *e.g.*, *In re Saffady*, 524 F.3d at 802; *Fuller v. Quire*, 916 F.2d 358, 360 (6th Cir. 1990). *Cf.* 12 James W. Moore et al., Moore's Federal Practice § 60.68[2] (3d ed. 2011) (explaining that a grant of Rule 60 relief "is rarely [an] appealable order," but noting that appeal will lie if the court "enters a corrected judgment so that there is nothing further to be decided by the district court").

Regardless of the finality of the 2004 consent judgment, the May 2009 Order lacked finality because it did not address its own impact on the parties' settlement agreement—an agreement that expressly required the entry of a consent judgment between General and Horizon. Accordingly, the district court asked the parties to consult on further proceedings, the parties filed responsive motions, and the district court ruled on these unresolved issues in a clarification order. Under the circumstances, General properly appealed the February 2010 Order, and this court may review it.

III.

*A. Standard of Review*

We generally review district court rulings on Rule 60 motions for post-judgment relief for abuse of discretion. *E.g.*, *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010); *United States v. Pauley*, 321 F.3d 578, 581 (6th Cir. 2003). General contends that we should review the district court's fraud-on-the-court ruling de novo because the district court exercised its inherent powers under Rule 60's "savings clause," section (d), instead of the post-judgment remedies identified in section (b). For support, General cites the Third Circuit's decision in *Herring v. United States*, which reviewed de novo a district court's 12(b)(6) dismissal of an independent fraud-on-the-court action instituted under Rule 60's savings clause. *See* 424 F.3d 384, 389–90 (3d Cir. 2005). But *Herring* conflicts with this Circuit's only panel decision reviewing a fraud-on-the-court ruling under Rule 60(d)(3), as well as this Circuit's cases reviewing other decisions rendered under the Rule's savings clause, all of which apply the abuse-of-discretion standard. *Maloof v. Level Propane, Inc.*, 429 F. App'x 462, 467 (6th Cir. 2011) (fraud-on-the-court finding under Rule 60(d)(3)); *Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) (independent action under Rule 60(d)(1)); *Barrett v. Sec'y of Health & Human Servs.*, 840 F.2d 1259, 1263 (6th Cir. 1987) (independent action under Rule's prior savings clause in section (b)).

The procedural posture of this case and our Circuit's cases reviewing other forms of post-judgment relief persuade us to follow *Maloof* and apply the abuse-of-discretion standard. Unlike *Herring*, which considered a district court's 12(b)(6) dismissal of an independent action, the instant

case concerns an intervening party's post-judgment motion to set aside a four-year-old consent judgment, which the district court decided after receiving evidence and hearing argument. Sixth Circuit law permits the district court to treat such motions, procedurally, as either an independent action or a post-judgment motion, so long as the classification does not prejudice the adverse party. *Mitchell*, 651 F.3d at 595 (citing *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 81 n.7 (5th Cir. 1970); 11 Wright, Miller & Kane, Federal Practice & Procedure § 2868 n.30, at 405 (1995)). We find the district court's treatment of HealthSouth's filing as a post-judgment motion appropriate under the circumstances.

We also find instructive that this Circuit reviews sanctions rulings deriving from district courts' "inherent powers" under the abuse-of-discretion standard. *E.g.*, *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011); *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010). Because Rule 60's savings clause refers to a court's existing powers, the "inherent powers" cases seem particularly apt. *See* Fed. R. Civ. P. 60(d) ("This rule does not limit a court's power to . . . (3) set aside a judgment for fraud on the court."); *see also Mitchell*, 651 F.3d at 595 (noting that the savings clause speaks to district courts' longstanding ability to hear independent equitable actions challenging a judgment).

Applying the abuse-of-discretion standard, we will reverse only if the court "'commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact.'" *Jones*, 617 F.3d at 850 (quoting *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008)). Post-judgment relief "is

circumscribed by public policy favoring finality of judgments and termination of litigation." *See Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001); *see also Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010) (distinguishing fraud on the court under the savings clause from Rule 60(b) motions and other fraud claims, noting that "[r]elief through an independent equitable action alleging fraud on the court, then, is a truly extraordinary form of relief"); Moore's Federal Practice § 60.21[4][c] (emphasizing narrow reach of fraud-on-the-court doctrine under Rule 60(d)(3), cautioning that broad application would render meaningless the remedies and time limitations prescribed by Rule 60(b)).

## B. Fraud on the Court

Fraud on the court refers to "the most egregious conduct involving a corruption of the judicial process itself." 11 Charles Alan Wright et al., Federal Practice & Procedure § 2870 (West 2011) (collecting cases). Treatises speak of such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering. *Id.* § 2870; Moore's Federal Practice § 60.21[4][a]. Although not doctrinally limited to such criminal acts, courts recognize the extraordinary nature of the remedy and cautioned against expansive use of the doctrine. In *Demjanjuk v. Petrovsky*, we observed that

> [f]raud upon the court should . . . embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

10 F.3d 338, 352–53 (6th Cir. 1993) (quoting Moore's Federal Practice § 60.33, omission in *Demjanjuk*) (setting aside an extradition order for fraud on the court because government attorneys failed to disclose exculpatory evidence in violation of the duty recognized in *Brady v. Maryland*, 373 U.S. 83 (1963)).  Accordingly, cases require a party seeking to show fraud on the court to present clear and convincing evidence of the following elements: "1) [conduct] on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court."  *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010); (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011–12 (6th Cir. 2009)).  "In practice, this means that even fairly despicable conduct will not qualify as fraud on the court."  Moore's Federal Practice § 60.21[4][c] (collecting cases for the proposition that perjury and non-disclosure by a single litigant did not rise to the level of fraud on the court).

The district court in this case cited *Demjanjuk* and the above factors, without detailing findings to support them, focusing instead on the non-adversarial nature of the consent judgment and counsel's non-disclosure of the terms of the settlement agreement as "distort[ing] . . . the judicial process."  May 2009 Order at *5–6.  Because the district court misapplied the above standard and HealthSouth has not shown the requisite clear and convincing evidence of the third and fourth factors for fraud on the court—scienter and violation of a duty to disclose—we determine that the district court abused its discretion and reverse.

### 1. Scienter

With regard to the scienter element, the district court conspicuously failed to find the attorneys' conduct intentionally false, wilfully blind to the truth, or in reckless disregard for the truth. Instead, the court cited with approval a Virginia case finding post-judgment relief available to cancel a collusive consent judgment, despite the absence of deceitful intent. *Id.* at *5 (quoting *Spence-Parker*, 937 F. Supp. at 563). At oral argument, HealthSouth conceded the absence of circuit precedent recognizing the constructive-fraud doctrine applied in *Spence-Parker*. Rather, under our fraud-on-the-court precedents, the alleged misconduct must demonstrate, at a minimum, a reckless disregard for the truth. *See, e.g.*, *Carter*, 585 F.3d at 1011–12; *Demjanjuk*, 10 F.3d at 348–49. *Demjanjuk* defined reckless disregard in this context as referring to situations where "the actor has . . . knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so." 10 F.3d at 349 (omission in *Demjanjuk*) (quoting Restatement (Second) of Torts § 500, cmt. (a)). Viewed through the lens of this objective standard, the record lacks support for conclusion that counsel for General and Horizon acted in reckless disregard for the truth.

Counsel for General and Horizon both appeared in person and jointly presented the district judge with a proposed consent judgment. Though the confidential settlement agreement went undiscussed, counsel brought a copy of it to chambers in case the judge asked to see it. Such behavior belies HealthSouth's claim that counsel intended to deceive the court; if they had such ill intentions, why appear in person and bring the settlement agreement with them?

Notwithstanding this reasonable conduct, HealthSouth contends that the consent judgment's damages figure affirmatively misstates the true damages set forth in the parties' separate settlement agreement. The district court's fraud-on-the-court judgment did not adopt this view, and the record does not support such a finding. The draft order presented to the district court—the consent judgment—does not speak of the parties' settlement agreement or its terms. HealthSouth makes much of the consent judgment's language stating that the district court "[had been] fully advised in the premises," but this boilerplate language does not suggest that counsel attempted to dupe the district court.

The settlement agreement, meanwhile, does not purport to establish Horizon's *liability* for General's contract claims; it sets forth only General's plans for *collecting* the consent judgment from Horizon. Thus, while the settlement agreement includes Horizon's promises to pay only $300,000 and funds returned from HealthSouth (Settlement Agreement ¶ 6(i), (ii))—in effect, General's covenant of limited enforcement—the settlement agreement in no way undermines the damages amount set forth in the consent judgment. Indeed, the settlement agreement, by its own terms, maintained Horizon's or Meadowbrook's liability under the consent judgment. (*Id.* ¶ 5.)[2]

HealthSouth also failed to show anything inherently dishonest about the consent judgment's damages figure. While HealthSouth challenges the methodology employed by General's damages expert and the total amount of damages, the district court's fraud-on-the-court ruling included no

---

[2]We note that this non-release provision prompted the Alabama Supreme Court, applying Michigan law to the fraudulent conveyance proceedings now-stayed, to conclude that General's covenants of limited collection did not operate as a release of liability. *Ex parte HealthSouth Corp.*, 974 So. 2d 288, 296 (Ala. 2007).

findings regarding the accuracy or reasonableness of the damages, and HealthSouth has not suggested that improper motives affected General's damages expert's estimate. Ultimately, neither the consent judgment's damages figure nor the settlement agreement's covenants of limited enforcement bespeak the reckless disregard for truth necessary for fraud on the court.

### 2. Duty to Disclose

In addition to the absence of scienter, the district court failed to identify a duty of disclosure violated by counsel. *Spence-Parker*, the only authority cited by the district court for the existence of a duty to disclose, purported to apply a doctrine of "constructive fraud" under Virginia's Rules of Professional Responsibility. *See* 937 F. Supp. at 562 (noting that EC 7-17, Va. Code Prof'l Resp. required "competent, adverse presentation of evidence and issues"). As noted above, HealthSouth concedes that this standard does not govern the present appeal. HealthSouth makes passing reference to Sixth Circuit cases acknowledging counsel's duty of candor, but General correctly points out that these cases concerned affirmative misrepresentations to the court and do not address counsel's obligations in presenting a consent judgment to the court. *See Holloway v. Brush*, 220 F.3d 767, 780 (6th Cir. 2000) (en banc) (criticizing a state agency for reneging on its earlier statement to the court that it would renew child custody proceedings); *Thompson v. Paasche*, 950 F.2d 306, 315 n.7 (6th Cir. 1991) (recognizing that lawyers' general duty of candor forbids "misrepresent[ing] the law when it clearly goes against the client"); *Cunningham v. Sears, Roebuck & Co.*, 854 F.2d 914, 916 (6th Cir. 1988) (reporting attorney for disciplinary investigation where attorney violated Circuit rules by concealing and misrepresenting material facts, namely his client's

knowledge of a witness-juror association and the district court's bench ruling on the post-trial motion).

Given the opportunity to supplement the district court's reasoning, HealthSouth presents no authority—under the Federal Rules of Civil Procedure, the Michigan Rules of Professional Conduct, or this Circuit's case law—for the proposition that counsel must disclose the terms of a confidential settlement agreement prior to seeking entry of a consent judgment. We note that the Michigan Rules' general duty of candor does not require such disclosure,[3] and Michigan

---

[3]As of the time of the entry of the consent judgment, the applicable Michigan Rule provided in pertinent part:

Rule: 3.3 Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false.

If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

Mich. R. Prof'l Conduct 3.3 (2004). Later amendments reorganized and modified the rule to preclude attorneys from, inter alia, knowingly

(a)(1) mak[ing] a false statement of material fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made

- 15 -

courts have even permitted parties to insurance disputes to enter side agreements without impairing

their consent judgments. *See, e.g.*, *Alyas v. Gillard*, 446 N.W.2d 610, 613–14 (Mich. Ct. App. 1989)

(explaining that a covenant to collect only from insurance proceeds did not release the insured from

liability under the consent judgment, and thus did not relieve the insurance company from liability

to the insured); *Action Auto Stores, Inc. v. United Capitol Ins. Co.*, 845 F. Supp. 417, 420–21 (W.D.

Mich. 1993) (same).

As the district court itself recognized, "corporations do not generally present their settlement

agreements to the court for approval." May 2009 Order at *4. Neither the district court nor

HealthSouth on appeal have identified a specific duty of candor violated by counsel's non-disclosure,

further underscoring that counsel did not act recklessly, as contemplated by the objective *Demjanjuk*

standard.

---

> to the tribunal by the lawyer;
>
> (2) fail[ing] to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
>
> (3) offer[ing] evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal[.]
>
> (b) If a lawyer knows that the lawyer's client or other person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to an adjudicative proceeding involving the client, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

Mich. R. Prof'l Conduct 3.3 (2011). None of these restrictions address the non-disclosure at issue in this appeal.

HealthSouth faults General's counsel for concealing and misrepresenting the consent judgment and settlement agreement to the Alabama courts in the fraudulent conveyance action. Assuming the truth of these allegations, this post-settlement conduct in *Alabama court* cannot demonstrate that counsel defrauded the *Michigan district court* that entered the consent judgment. Though we do not endorse the litigation tactics allegedly employed by General's counsel in the Alabama proceedings, that conduct has no bearing on whether counsel defrauded the Michigan court with their presentation of the consent judgment.

The district court's concern that General employed "ambush" tactics against HealthSouth overstates the case. The consent judgment did nothing more than establish Horizon's liability to General, which under Alabama law enabled General to sue HealthSouth for assets fraudulently transferred from Horizon. *See* Ala. Code § 8-9A-7(b); *Ex parte HealthSouth Corp.*, 974 So. 2d 288, 293–98 (Ala. 2007). Stipulated orders generally do not have preclusive effect on third parties, *see, e.g.*, *In re Kane*, 254 F.3d 325, 329–30 (1st Cir. 2001) (collecting authority); *Benoay v. Decker*, 517 F. Supp. 490, 496 (E.D. Mich. 1981), *aff'd* 735 F.2d 1363 (6th Cir. 1984) (unpublished table decision), and the consent judgment's damages figure does not establish the merits of General's separate fraudulent conveyance action against HealthSouth, *see* Ala. Code §§ 8-9A-4–5 (setting forth the substantive requirements for a fraudulent conveyance action); *Thompson Props. 119 AA 370, Ltd. v. Birmingham Hide & Tallow Co.*, 897 So. 2d 248, 262–63 (Ala. 2004). *Cf.* Ala. Code § 8-9A-7(a)(1) (authorizing creditor remedy of "[a]voidance of the *transfer* to the extent necessary to satisfy the creditor's claim" (emphasis added)).

To the extent that the consent judgment's damages figure bears on the merits of the Alabama fraudulent conveyance action, the Alabama courts will evaluate the circumstances leading to the entry of the consent judgment in determining whether to credit the damages figure. *Continental Casualty*, the New Mexico decision cited by the district court, did exactly that. As a non-issuing court asked to enforce a consent judgment, it considered the circumstances leading to the entry of the consent judgment, deemed them collusive, and declined to give the consent judgment preclusive effect. *Cont'l Cas.*, 961 F. Supp. at 1509. HealthSouth will suffer no unfair prejudice from reinstatement of the consent judgment because it retains the ability to challenge the damages figure in defending the Alabama fraudulent conveyance action. *Cf. Mitchell*, 651 F.3d at 595 (listing inability to present a defense as an "indisputable element[]" of an independent action to set aside a judgment under Rule 60(d)(1)).

## C. Contingent Cross-Appeal: Timeliness of Relief Under Rule 60(b)

As a fall-back position, HealthSouth cross-appeals the district court's denial of relief under Rule 60(b)(3). HealthSouth does not contest the district court's conclusion that the (b)(3) limitations period had expired, but instead asserts that it presented a separate collusion claim subject to the more lenient limitations period applicable to Rule 60's "catchall provision," subsection (b)(6). *See* Fed. R. Civ. P. 60(b)(3) (authorizing post-judgment relief for fraud, misrepresentation, or misconduct by an adversary), (b)(6) (permitting remedy for "any other reason that justifies relief"), (c)(1) (providing one-year limitations period for (b)(3) claims and a "reasonable time" limitations period for (b)(6)

claims). HealthSouth argues that its claim qualifies under (b)(6) because subsection (b)(3) does not expressly apply to claims of collusion.

We question how the allegations underpinning HealthSouth's purported collusion claim differ from those underlying its fraud-on-the-court claim. HealthSouth itself repeatedly characterizes the actions of General's and Horizon's counsel in subsection (b)(3) terms: fraud, misrepresentation, and misconduct. (*See* HealthSouth Br. at 2 (referring to the parties' "egregious fraud"), 33 ("misrepresentations"), 39–54 (describing opposing counsel's failure to diseclose as misconduct).) We "adhere[] to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989); *see also East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011). In short, a party cannot escape the time limitations applicable to certain Rule 60 provisions by dressing its claim in subsection (b)(6) clothes. *See Hopper*, 867 F.2d at 294 ("[D]istrict courts may employ subsection (b)(6) as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present."); *Lyle v. Brazil*, 168 F.3d 490 (6th Cir. 1998) (unpublished table decision) (citing *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). Accepting HealthSouth's own characterization of the alleged misconduct, its claim fits under the auspices of subsection (b)(3), and HealthSouth has not shown extraordinary circumstances qualifying its claim for (b)(6) treatment. We therefore agree with the district court that HealthSouth cannot bypass subsection (b)(3)'s one-year limitations period under the guise of a (b)(6) claim.

In any event, HealthSouth has not shown that it filed its motion within a "reasonable time," as required for a 60(b)(6) claim. *See* Fed. R. Civ. P. 60(c)(1). HealthSouth filed its Rule 60 motion in the Michigan proceedings in October 2008, more than four years after entry of the consent judgment. HealthSouth blames General for the delay, claiming that General actively concealed the terms of the consent judgment and settlement agreement in the Alabama proceedings. But the record reflects that General notified HealthSouth of the consent judgment in its November 2004 interrogatory responses for the Alabama proceedings (R. 236, Ex. 16 at 2–4), and HealthSouth does not dispute that it had access to the settlement agreement in January 2006 when it filed a motion for summary judgment in the Alabama proceedings (*see* HealthSouth Br. at 51 (asserting that General concealed the settlement agreement for a year after instituting the Alabama proceedings); General Reply Br. at 48). HealthSouth offers no explanation why, given such notice of General's and Horizon's agreement, it waited nearly two years to file its Rule 60 motion in the Michigan proceedings. Though courts permit longer delays in other cases, the reasonableness of the delay "depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." *See Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citing cases deeming two-year delay reasonable). Assessing these factors, HealthSouth filed too late. *See Blachy v. Butcher*, 129 F. App'x 173, 179 (6th Cir. 2005) (finding that a three-year delay did not satisfy the Rule's "reasonable time" limitation); *Suttles v. City of Chattanooga*, *Tenn.*, 886 F.2d 1316 (6th Cir. 1989) (unpublished table decision) (same, two-and-a-half-year delay).

IV.

For the foregoing reasons, we REVERSE the district court's fraud-on-the-court judgment,

AFFIRM the Rule 60(b) judgment, and REINSTATE the May 3, 2004 consent judgment.

**ALICE M. BATCHELDER, Chief Judge, dissenting.** I concur in section III.C of the majority opinion affirming the district court's Rule 60(b) order, but I respectfully dissent from the majority's decision to reverse the district court's fraud-on-the-court ruling. The record contains evidence indicating that, at the least, counsel acted in reckless disregard for the truth and that they had a duty to disclose to the court the information that was in the settlement agreement. Reviewing the district court's determination for abuse of discretion with such evidence in the record, I do not have a "definite and firm conviction that the court below committed a clear error in judgment in the conclusion it reached." *Paschal v. Flagstar Bank*, 295 F.3d 565, 576–77 (6th Cir. 2002).

First, although the district court did not make explicit findings regarding counsels' intent, the record supports the district court's conclusion that counsel, on some level, intended to deceive the court. The majority places significant weight on counsels' choice to bring the settlement agreement to the judge's chambers, concluding that they must not have had any intent to deceive if they were willing to show it to the court upon its request. However, it is just as reasonable to draw the conclusion that the parties knowingly concealed information they knew the judge would consider material. They brought the settlement agreement with them because they knew the judge might ask to see it, but they obviously preferred that he execute the consent judgment without knowledge of the settlement agreement's collection-limitation. Where there are two reasonable interpretations of a single act, we cannot say that the district court's conclusion based on one of the interpretations was a clear error in judgment. *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997) ("[I]nasmuch as other interpretation[s] might be reasonable, we cannot conclude that the district court committed clear error.").

The majority also believes that counsel lacked any deceptive intent because the consent judgment and the settlement agreement were neither false nor deceptive. This conclusion, however, requires a reading of the documents in isolation. When the settlement agreement and consent judgment are read together (something counsel deprived the district court of the opportunity to do), it is clear that the consent judgment takes on a different meaning. In isolation, the consent judgment says that Horizon will pay $376 million to General Medicine. Indeed, this is what the court believed the consent judgment meant. However, when read in light of the settlement agreement, the consent judgment takes on a completely different meaning: Horizon will pay only $300,000—a mere 0.08% of the judgment—and a third party will pay the remaining 99.92%. Because the court read only the consent judgment, it believed that Horizon would be obligated to pay the full amount of the judgment to General Medicine. From the entire record, it is evident that counsel acted with reckless disregard for the truth when they gave the court the consent judgment without the settlement agreement, indicating at best that they failed to "appreciate the high degree of risk" that the district court would believe the consent judgment meant one thing when it in fact meant another. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 349 (6th Cir. 1993).

The majority also reasons that counsel could not have been deceptive because there is nothing dishonest about the $376 million figure. This conclusion, however, misses the critical point. It is immaterial whether the figure is an accurate representation of damages because counsels' deception does not lie in the substance of the consent judgment but rather in their representation of the judgment to the court. By failing to disclose the substance of the settlement agreement, or any other indication that the consent judgment was limited, counsel led the court to believe that the consent

judgment was something it was not—a fairly negotiated figure. Protected by the settlement agreement, Horizon knew it would never be obligated to pay the judgment figure, and, therefore, it had no interest in negotiating that amount. Indeed, General Medicine admits that it refused to negotiate the judgment figure, a fact the majority completely ignores. Had counsel made the district court aware of the settlement agreement's collection limitation, the court would at least have had the opportunity to determine whether—prior to approving the judgment—the parties had engaged in arm's length negotiations in reaching that figure. And even if the amount of damages accounted for in the judgment is accurate, counsel still misrepresented the nature of the consent judgment to the court.

Finally, the majority concludes that counsel were not dishonest because Horizon is still "on the hook" for the remaining amount of the settlement agreement. This conclusion requires ignoring the plain language of the settlement agreement, which expressly states, "Gen[eral] agrees and covenants that it[] will not enforce, execute against, or attempt to collect *in any fashion* from Horizon and/or Meadowbrook as a result of or under the consent judgment beyond the amounts identified in paragraph 6(i) below [providing for the $300,000 payment]." The majority reasons that Horizon is still on the hook because the settlement agreement goes on to require Horizon to return any assets it receives as a result of the Alabama action. This clause, however, is not at all dependent on the amount of the consent judgment. The parties intended Horizon to be on the hook for only two things: the $300,000 payment and the return of any and all assets it receives from the Alabama action. The latter obligation requires Horizon to return *all* assets it may receive from the Alabama action, even if the value of those assets exceeds $376 million. They never intended Horizon to pay

"in any fashion . . . as a result of or under the consent judgment" more than $300,000. Any other reading is inconsistent with the express language of the settlement agreement.

Second, I cannot agree with the majority's conclusion that counsel did not have a duty to disclose. The majority's conclusion that counsel did not breach a duty to the court because attorneys do not have a duty to disclose settlement agreements is in my view much too narrow a concept of counsels' duties. It is not the settlement agreement generally that counsel had a duty to disclose, but rather its specific limitation on the collection of the judgment—a material fact that would have affected the court's adjudication of the issue. Indeed, the district court stated that had it known about the limitation, it would have more thoroughly scrutinized the judgment figure because it would have suspected that the figure was not negotiated at arm's length, a suspicion that would have been confirmed. The majority's discussion of counsels' duties fails to recognize this Court's explicit statement in *Demjanjuk* that "[a]s an officer of the court, every attorney has a duty to be completely honest in conducting litigation." 10 F.3d at 352. Counsel led the court to believe that Horizon would be responsible for paying $376 million, but counsel knew this was not the case. Counsel allowed the court to believe that the judgment figure fairly represented the interests of both parties, but counsel knew that, in reality, the parties did not negotiate the figure and General simply wanted a large judgment so that it could qualify as a creditor in the Alabama action. By withholding this information from the court, counsel breached their duties to be completely honest in conducting litigation. This is even more true in light of the consent judgment's inclusion of the language "and the court being more fully advised in the premises." The majority dismisses this language as boilerplate; but because this phrase is so common in consent judgments, it only further indicates that

counsel allowed the court to believe that this was a typical consent judgment between two parties who had fairly negotiated the damages figure, when in fact it was not.

In this case, where counsel failed to disclose specific elements of a settlement agreement that radically changed the meaning and effect of a consent judgment presented to the court, the district court was within its discretion to find that counsel violated their duties to be completely honest with the court, regardless of whether there is a specific duty to disclose a settlement agreement.

I respectfully dissent.